CARLTON WELLBORN, plaintiff in error, vs. SHEPHERD ROGERS and wife, defendants in error.

[1.] One of two defendants against whom a verdict has been rendered appeals, the other does not, the defendant not appealing, being no party to the issue to be tried on appeal, is a competent witness.

[2.] When the sworn answer of the defendant offered as a witness has been read to the Court, it was not necessary for the party offering the witness, to state what he expected to prove by him.

[3.] The answer of a defendant, not a party to the issue to be tried, is not evi_ dence in the cause.

[4.] A deed made by legatees to an executor when under age is *prima facie* void, but if he show that they had the full benefit of what it was sold for at fair legal sale, they cannot complain.

[5.] The Court committing an error in fact in his charge to the jury, in a matter calculated to mislead the jury to the prejudice of one of the parties, cannot excuse an error of law, growing out of that mistake of facts.

[6] The Act of the Legislature of 1829 gives the Court of Ordinary all the powers of a Court of Chancery to the extent stated therein—in regard to the sale of a testator's property. Judges Lumpkin and Benning say they held it under the Act of 1805. McDonald thinks not.

[7.] The failure of an executor or guardian to make returns is an omission of duty, and therefore a breach of trust, and throws on him the burden of proving to the satisfaction of the Court and jury that he has discharged the duty of his trust with fidelity.

[8.] A receipt by a legatee to the executor, who became such by intermarriage with her mother the executrix, and with whom the legatee lived during her minority, and after her majority, to the time of the giving of the receipt, having great confidence in him, and entrusting him with her property, is no bar to an examination into the accounts prior to the receipt.

[9.] An unbroken continuance of the management of the property of a *cestui que trust*, by a trustee, is, in effect, a continuance of the trust, and a

Wellborn vs Rogers and wi    .

settlement between the parties may be impeached for any of the causes for which a settlement between a trustee and *cestui que trust* may be impeached; and the statute of limitations will not begin to run in cases of fraud until the fraud is discovered, if the party is not in *laches*, and is under no disability.

[10.] If the fraud be committed on a *femme sole* and is not discovered until after marriage, the saving in the statute of limitations protects her during cov_ erture.

[11.] If the trust be terminated, but the trustee continues to manage the property and maintain his influence over the *cestui que trust*, so as to stifle enquiry, that statute will not commence running until that connection is wholly at an end.

[12.] The bequest of a negro when a certain debt is paid, does not charge that negro with the payment of the debt.

In equity, From Houston county. Tried before Judge POWERS at the April Term 1857.

This was a bill filed .by Sheppard Rogers and Nancy L. his wife, formerly Nancy L. Gartrell, against Carlton Wellborn, for an account and settlement of the estate of Joseph Gartrell sen., deceased, and to recover from defendant the share or legacy due and coming to Mrs. Rogers under the will of her deceased father—the said Joseph.

Joseph Gartrell sen. died in Wilkes county, Ga., about 25th November, 1816, possessed of a considerable estate, real and personal, and leaving the following last will and testament, to wit:

GEORGIA,           In the name of God amen, I Joseph Gartrell sen., of the county and State aforesaid, Wilkes county. being weak in body, but of sound, disposing mind and memory, do make, ratify and confirm this my last will and testament, disannulling, revoking and rejecting all others.

In the first place I recommend my soul to Almighty God, who gave it, and my body to be decently buried; and after my lawful debts are paid, I will and bequeath first to my son Jeremiah Gartrell, my negro man Felix, during my said son Jeremiah's lifetime, and in case said negro man Felix should

survive my said son Jeremiah, that in that case he is to go to my five youngest children, viz: Jefferson, Charles, Luciahanna, Nancy Simmons, and Mary Adeline. And also give said son Jeremiah one dollar in specie.

2d Item. I give and bequeath to my beloved wife Rebecca Gartrell, in trust for my son John Gartrell, one-half of my gold mine tract of land, and it to be divided by my executor, and John to have his choice of halves after divided, and also my negro woman Henny and her three children, Daniel, Caty, and Fanny; but my further will is, that in case my son John should die without lawful issue from his body, his half of the gold mine tract of land and the four negroes Henny and her three children, Daniel, Caty and Fanny, to go to my two sons Jefferson and Charles.

3d Item. I bequeath to the lawful issue of my son Francis Gartrell's body, my two negro girls, viz: Maria, about 14 years of age, and Sukey, about the age of 12 years.

4th Item. ·I bequeath to my son Joseph Gartrell all my land lying and being to the east and south-east, &c. [Here follows a description of the land.] Also Nancy and her two children, viz: Sophia and Isaiah, and also Allen, when I pay Capt. A. Simons what I owe him.

5th Item. I bequeath to the lawful issue of my daughter Matilda Murray's body, three negroes, viz: Charlotte and her two children Fanny and Isaiah, which negroes I lent when she was married.

6th Item. I bequeath to my two sons Jefferson and Charles, the other half of my gold mine tract of land that my son John does not choose after my executors divide it.

7th Item. I bequeath all the rest and residue of my property to be equally divided between my beloved wife Rebecca and my five youngest children, namely: Jefferson, Charles, Luciahanna, Nancy Simmons and Mary Adeline; and my further desire is, that my beloved wife Rebecca should have the care and control of all my said five youngest children's property until they shall respectively arrive at the age of

eighteen years; then it is my will and desire that they should receive their part of the said property. It is my further will that my negro man Stephen should be hired out, and the hire appropriated to the schooling of my aforesaid five youngest children.

8th and lastly, he appoints his wife and Abraham Simons executrix and executor of his will.

This will was duly admitted to probate, and his widow, the said Rebecca, alone qualified as executrix thereof, and took possession of the whole estate (except that specifically bequeathed and devised) which consisted of a plantation and some fifteen or twenty negroes, and horses, cows, hogs, provisions, plantation tools and household and kitchen furniture, ordinarily found upon plantations, and all of which (the land excepted) by an appraisement duly made and returned to the ordinary's office, was valued at $7,114 00.

The widow remained on the place in 1817 and 1818, with the children, and made crops; in the latter part of the year 1818, she married the defendant Carlton Wellborn, who went into the possession and management of the estate, making crops, supporting and maintaining the children and paying off debts against the estate until 1826, when he removed to Milledgeville, rented out part of the plantation and hired out a portion of the negroes. He remained in Milledgeville about two years (1826 and 1827) when he removed to Houston county, taking with him the younger children of testator and the negroes, where he resumed planting operations, and where he has remained ever since.

Jefferson, one of the younger children, died before testator; John, one of the sons, whose property was left in trust with his mother, died in 1827, without having married, and having no issue.

Defendant sold the negro man Stephen in 1819, and the woman Hetty and her children in 1821 or 1822, for the purpose, as he alleged, of paying debts, &c.

In 1832 the four younger children, to wit: Charles, Lucy H., Nancy Simons and Mary Adeline, (Jefferson being dead) executed a deed conveying all their title, right and claim in and to the tract of land in Wilkes county belonging to the estate to defendant, " in consideration of the sum of ten dol. lars to us in hand paid, as well as for the full consideration, and value being allowed to us jointly and severally in the distribution and *division of the negroes* and other property of the estate of Joseph Gartrell deceased, which has been paid and allowed to us by Carlton Wellborn," &c. Dated 12th Dec., 1832.

On the 10th April, 1833, the same legatees executed a conveyance to two of the children of defendant by their mother, being the half brother and sister of the donors, of two negroes—Horace and Louisa—being a part of the slaves or their issue, bequeathed in said will to John Gartrell) "in consideration of love and affection."

On the same day (10th April 1833) the following instrument was executed:

GEORGIA, } Articles of agreement and settlement be-
Houston county. } tween us the heirs and legatees of the estate of Joseph Gartrell deceased, are as follows, viz: For and in consideration of the debts of said estate, costs and expenses having been paid by Rebecca and Carlton Wellborn, as executors, as also their being entitled to a part thereof, we do jointly and severally give over and agree to set apart to them the following negroes, viz: Merrick, Rachel and Lucy; and do by these presents give and deliver said negroes over to the said Rebecca and Carlton Wellborn. Also acknowledge the receipt of each of our parts, and give up and relinquish and set over all claim or claims, part or parts of any money or other valuable thing which is or may have been in their hands or possession from the sale of lands, negroes or other property, it having all been fairly taken into consideration and settled for; and for further consideration the said Rebecca and Carlton Wellborn are not hereafter to claim from

either of us' any money or other thing for either boarding, clothing, schooling, or for debts and costs they have paid, provided that we and each of us do faithfully comply with this settlement and remain contented therewith, without molesting them in the peaceable enjoyment of their part, and whatever they may have received or enjoyed from said estate in part of the consideration of the above. We acknowledge the receipt the following negroes, viz: Charles G. Gartrell has received from said executor 3 negroes, viz: Peter, Charlotte and Little Lucy, Lucy H. has received 3, Fanny, Felix, and Harriet; and Nancy S. and Mary A. have received undivided 6 negroes, viz: Ailsey, Henry, Mary, Wace, and two Carolines; to which division we have all agreed and consented, and entered into mutually, and bind ourselves to be contented with what we have here acknowledged the receipt of, not to molest each other in the peaceable enjoyment of what has been allowed each. In witness whereof we have hereunto set our hands and seals this tenth day of April, 1833.

CHARLES G. GARTRELL, [L. S.]
LUCY H. GARTRELL,     [L. S.]
NANCY S. GARTRELL,    [L. S.]
MARY A. GARTRELL,     [L. S.]

In the presence of
  MARY E. WELLBORN.
  JOHN HERRINGTON, J. P.


At the time of the above division and receipt, Nancy S. was about twenty years of age, and Mary A. over eighteen, and soon thereafter married John C. Mounger.

In 1839, Nancy S. intermarried with Sheppard Rogers, the complainant, and prior to her marriage on the 28th Dec., 1838, she executed a receipt to defendant and wife for four negroes, which with fifty dollars to be afterwards paid to her, she acknowledged to be in full of her part of the estate of her father, the said Joseph Gartrell, the said Wellborn and wife pay-

ing all the debts of said estate and clearing her of all respon-sibility ; and further reciting that said negroes were to be left with defendant and work for their own and her support until called for.   Upon her marriage, shortly after, with complain-ant, these negroes and some other articles were turned over to him, and the fifty dollars paid.

In 1851, the following agreement to arbitrate was entered into between Rogers and Wellborn, viz:

GEORGIA,    ⎱   Whereas, a controversy has arisen be-Houston county. ⎰ tween Carlton Wellborn and Sheppard Rogers, of said county, relative to the distribution of the es-tate of Joseph Gartrell, late of the county of Wilkes, in said State, deceased, and they being desirous of settling the same upon the principles of justice and amity, do agree that a set-tlement of their rights and interests in and to said estate shall be made between them in the following manner, to wit:

1st.  It is agreed by and between the above named parties that a list of the grand jurors which has been drawn for the county of Houston at any time within the last 18 months shall be made out (the said Carlton selecting any list that may have been drawn within that time) and that the said Sheppard and the said Carlton shall proceed to strike the names of said jurors from said list alternately, until there re-main two names only on said list unstricken, and that the men whose names remain unstricken on said list shall have the power to choose a third man, and the three men selected and chosen in the manner above stated shall, by arbitration, set-tle all the matters of controversy between the parties relative to the estate of the said Joseph Gartrell, deceased.

2d.  For the purpose of enabling the arbitrators to make a settlement between the above named parties understandingly and to dispense with the introduction of " technicalities and mystifications," the said Carlton shall make (if he desires to do so) a written statement, under oath, of all his actings and doings in relation to the estate of said deceased—that he

shall answer all written interrogatories relative to his man-
agement of the property and effects of said deceased in wri-
ting and under oath, in the same manner that bills in Chan-
cery are usually answered by defendants; and that all rec-
ords, exemplifications of records, and depositions and affida-
vits pertinent to the matters of controversy between the
parties shall be received in evidence by the arbitrators, who
may be selected as agreed upon between the parties.

3d. That the arbitrators, if they deem it necessary, shall
be at liberty to have legal advice of their own choosing at
tne mutual expense of the above named parties, to enable
them to decide any points of law that may aris 'n the set
tlement of said controversy.

4th. The said Sheppard Rogers and the said Carlton Well-
born, each of them, hereby promise and agree to stand to
perform, and abide by such award as the arbitrators selected
as above and under the above rules and regulations, may
make relative to the distribution of the estate of the said Jo-
seph Gartrell, deceased.

September 22d, 1851.

SHEPPARD ROGERS,
CARLTON WELLBORN.

Wellborn afterwards refused to arbitrate, and Rogers and
wife filed their bills against him, for an account, and in addi-
tion to the facts above stated, alleged that defendant from
1819 went into the possession of said estate, and used and
controlled and managed the same, making large profits, which
he had never accounted for and paid over. That the deed
executed in 1832, for the land in Wilkes to defendant, and
deed of 1833 for the two negroes to his children, were
without consideration, and signed by Mrs. Rogers before she
was twenty-one years old, and void. That the receipt exe-
cuted by her in 1838, for her share in full of her father's es
tate was delivered without any knowledge, on her part, of the
condition of the estate, and done by the procurement and in-

fluence of Wellborn, her step-father, with whom she was living at the time, and that the division of the negroes was unequal. And that there was in his hands large sums and amounts derived from the income of the plantation, the sale and hire of the negroes, and the collection of debts due the testator, wholly unaccounted for, and the share of which due to complainants had never been paid over to them.

The bill was subsequently amended, making Charles. G. Gartrell a party, and charging that he and Wellborn combining, &c., had collected large amounts from debts due the estate, sales of property, &c., which had never been accounted for and paid over.

The answer of Wellborn admitted the facts as to the death of testator, his marriage with his widow and taking possession of the estate, &c., but denied that he had made the large profits out of the property charged in the bill; that the plantation in Wilkes was a poor one, and that it required all and more than was made, to support, maintain and educate the family and children. That the proceeds of the negroes sold, were applied to the payment of the debts against the estate, and the support of the family—that some of the negroes were recovered from him by suit brought against him after his marriage with the widow—and that he had fully settled with and paid to complainants their full share and more than their share of said estate; and that complainants acquiesced in and were fully satisfied with said settlement and the share turned over and paid to them from 1839 to 1851, and that their demand is stale and barred by the statute of limitations; and insists that the agreement to arbitrate, as stated in the bill, is not such an admission or recognition of complainant's claim as will relieve them from the operation of the statute.

Charles G. Gartrell answered the amended bill, and denied that he had received any money or other thing belonging to the estate. That under the will of his father he was

entitled to the legacy or estate of his brother John, at his death, and that the two negroes given by himself and his sisters in 1833, to their half brother and sister, were negroes belonging to John at the time of his death, and to which they (his sisters) really had no claim or title.

Many other facts are set out, and charges made in the bill and answers, but the foregoing summary, together with the proceedings on the trial, and the opinion of the Court, contain all the facts necessary to a proper understanding of the points adjudicated.

A large mass of testimony was offered on both sides. The complainants submitted their proofs and went through, without any exception taken to the rulings or decisions of the Court in relation thereto.

1st. Defendant then entered upon his defence, and amongst other testimony offered the depositions of Charles G. Gartrell, who was a co-defendant, by amendment to complainant's bill. The Court rejected the testimony on the ground that the said Gartrell was a co-defendant. To which decision counsel for defendant excepted, and assign the same as error, because complainants ask for no judgment or decree against said defendant. No evidence was introduced against him, and no verdict and decree against him on the first trial, but against Wellborn alone, and who had alone appealed.

The testimony being closed, the Court charged the jury that this was a question of mere calculation and has nothing to do with the *character* of the litigants.

2d. As far as the returns go, you must take them as the basis of your calculations. When the defendant ceases to make returns, you go on and calculate and make rests every six years. It was Wellborn's duty to make returns, and he can derive no benefit from failing to do so, and responding generally that he can't tell. To which charge defendant excepted.

3d. The Court further charged that any conveyance made

by Mrs. Rogers while under age is void. To which charge defendant excepted.

4th. The Court further charged, that the legacy to John Gartrell, by the will of his father, lapsed at his death, without heirs, and Mrs. Rogers is entitled to one-fifth part of the same. To which charge defendant excepted.

5th. Counsel for complainants requested the Court to charge as follows :

1. That it is the duty of an executor or guardian to keep correct accounts and to make annual returns to the Court of Ordinary.

2. That an executor and guardian are chargeable with all the assets and effects that come into their hands, and it is their duty to use, manage and control the same for the sole benefit of the legatees and wards, and that whatever profits may be made out of the trust property belongs to the *cestui que trusts;* and the executor or guardian is not entitled to participate in said profits.

3. That when there is a will, *the will* is the law of the executor, and it is his duty to execute and obey all the provisions thereof, unless otherwise directed by a Court of Chancery.

4. That the will of Joseph Gartrell created an express trust, and constituted Rebecca Gartrell, his widow, guardian of the property of his four minor children, and upon her intermarriage with defendant, this trust devolved upon him.

[This request to charge, the Court declined, but charged that if Wellborn accepted the trust and took possession of the property, he was bound to account as executor and guardian.]

5. That it was defendant's duty to keep correct accounts and to make annual returns to the Court of Ordinary; and the law admits of no excuse, and the expense of the returns is no excuse.

6. That when an executor or guardian neglects to keep accounts and make annual returns, he is held to *strict* proof

that he has done his duty in the management of the trust property; and that his answer to a bill in equity setting up that he has done his duty, is not sufficient, but he must *prove* it, and prove how and in what manner he has done it.

7. That Wellborn's returns to the Court of Ordinary are evidence for him, and that when he sets up in his answer payments and expenses not contained in his returns, such payments and expenses are not to be allowed him unless *strictly* proven, and the answer alone is no evidence for him.

8. That the answer of the defendant to a charge in the bill which is responsive, is evidence for him, unless overcome by two witnesses, or one witness and circumstances equivalent to the testimony of another witness; but where the answer sets up new matter not responsive to the bill, it is no evidence unless defendant prove it. So when the bill charges the defendant with having received money or property, and the defendant admits its receipt, but sets up that he paid it away, that part setting up the payment is not evidence—*he must prove it.*

9. That when Wellborn answers that he has disposed of money or property of his wards in payment of debts or expenses in educating them, the answer is no evidence, but he must prove it; and it is no excuse that he has forgotten it; he was bound to have kept accounts.

10. That Wellborn was bound to so cultivate the land and employ the negroes and other property of his wards as would have been most profitable and beneficial to them; and he is liable for the annual hire of the negroes not employed on the lands, and for the rent of the land when not cultivated; and that it is no excuse that he has forgotten the amounts of hire and rents.

11. That defendant is liable for the price of Stephen, sold in 1819, and Hetty and her three children, sold in 1821 or 1822, for the price of the land sold, for the amount he sold the perishable property for in 1826, and all property sold, rented or hired with interest at 8 per cent. for the first six

years, and then compounded every six years up to the pres-
ent time.    This charge was given as requested, except that
the Court instructed the jury to compute interest at 7 per cent.
after 1845.

12. That if the jury believe that there was any fraud in
obtaining the deed for the land in Wilkes county, it is void;
and as defendant admits that Mrs. Rogers was then under
age, it is voidable as to her, and must be set aside and defen-
dant held liable for the price of the land and interest, as
above stated.

13. That when the defendant undertook to have a divis-
ion of the property on 10th April 1833, it was his duty to
have apprised his wards fully of their rights, by exhibiting
to them in writing a full and detailed account of his man-
agement and expenditures of their estate from year to year,
and to have furnished them with a copy of the will of their
father, and had them advised and aided in the settlement and
division by some impartial friend, and if this was not done
and Mrs. Rogers was ignorant of her rights, or was deceived
or misled by her confidence in defendant, or if she was un-
der the age of 21 years, the division is not binding on her
nor the deed then executed by her; and if the property was
then in his hands, the deed is no bar.    She may go behind
it.

14. That the deed of gift, dated 10th April 1833, if the
jury believe there was any fraud or under influence in pro-
curing it, is void.    Or if they believe it was procured by defen-
dant while the relation of guardian and ward existed, it was
a breach of trust on his part and he is bound to account to
Mrs. Rogers for one fourth the value of the two negroes nam-
ed in the deed, with interest.    Or if she was at that time un-
der age, it is void as to her, and defendant must account for
their value, with interest compounded every six years.

15th. That as to the division and receipt, dated 28th De-
cember, 1838, and signed by Mrs. Rogers; if they (the jury)
believe that Mrs. Rogers, although over 21 years of age, was

living with defendant, and her property was under his control and management up to the time of her marriage, the relation of *guardian and ward* still continued, then the settlement and receipt are *not a bar*, and complainants may go behind it, and open the settlement; and more especially can they do this, if she was not at the time fully apprised of her rights, by an exhibition of the will and a full statement in writing of the accounts of defendant as executor; or if there was any concealment, fraud, or undue influence by defendant.

16th. That the statute of limitations does not run against a trust, so long as the trust exists, and although it begins to run when there has been a final settlement between a guardian and ward, and the ward's property has left the care and control of the guardian; yet while the property remains in possession of the guardian, the trust continues, and the statute does not begin to run, notwithstanding a settlement. And if they believe that Mrs. Rogers' legacy remained in defendant's possession up to the time of her marriage in 1839, and she has been a *feme covert* ever since, the statute of limitation has never begun to run against complainants.

All of which the Court charged as requested, except the fourth, which was modified as therein stated. And to all of which charges, counsel for defendant excepted.

The Court further charged the jury that the bequest of the negro Allen to Joseph Gartrell, made him, the negro, chargeable with the debt due to Abram Simons, and that neither the executrix Rebecca Gartrell, nor defendant Wellborn had a right to pay that debt out of the residuary estate.

To which charge defendant excepted.

Defendant's counsel then requested the Court to charge as follows:

1st. That after the lapse of twenty years from the date of a judgment, the law presumes its payment, and this pre-

sumption is conclusive, unless there is evidence to rebut it. This charge, as requested, the Court gave.

2d. That if Mrs. Rogers was over 21 years of age when she gave her receipt in full to defendant on the 28th December, 1838, the statute of limitations began to run against her from that time, and her marriage afterwards did not stop it, and she is barred after the lapse of 13 or 14 years.

This charge the Court refused to give, and defendant excepted.

3d. That complainants, by their amendments, having charged that the recitals in the deeds of 1832 and 1833, and also in the receipt of 1838, and all the inducements set up by defendant as leading to the execution of said papers, are false, wicked and fraudulent; the answer alleging the truth of said recitals and inducements is responsive and evidence, and must be overcome by two witnesses, or one witness and circumstantial evidence equal to the testimony of another witness.

The amendment having also alleged that defendant concealed from Mrs. Rogers her age, and her interest in her father's estate, and that he made her sign said deeds and receipt without knowing their contents; the answer denying these allegations is responsive and evidence, unless overcome by two witnesses or one witness and corroborating circumstances equal to the testimony of another witness.

This request the Court refused to charge and defendant excepted.

4th. That perjury, fraud, imposition, and bad faith, are not to be presumed, *without evidence*, especially after many years have elapsed since the events occurred, which are called in question, but the law presumes honesty and fairness.

This the Court charged.

5th. That even when the lapse of time is not a positive bar to a suit, yet that Courts of Equity regard unfavorably the assertion of a claim, where a party has acquiesced a

considerable length of time, before resorting to the Court for redress.

This was charged as a general rule, but that when there was ignorance or disability, there might be an excuse for the delay.

To which defendant excepted.

6th. That under the will of Joseph Gartrell, sen'r, the legacy to Jefferson and Charles, did not lapse on the death of Jefferson, or fall into the residuary estate.

This the Court refused to charge, and defendant excepted.

JOHN M. GILES; WARREN & HUMPHRIES, and JAMES A. PRINGLE, for plaintiff in error.

S. T. BAILEY, contra.

By the Court.—McDONALD J., delivering the opinion.

This case comes up on errors assigned upon the rejection by the Court of Charles G. Gartrell's depositions offered by the defendant, and on the charge of the Court as given, and on the Court's refusal to charge as requested. The bill was filed originally against Carlton Wellborn as executor, in right of his wife, Rebecca Gartrell, of the last will and testament of Joseph Gartrell deceased. Charles Gartrell was made a party defendant by amendment of the bill. The testator appointed Abraham Simons his executor and his wife his executrix. Simons did not qualify. The wife qualified and Wellborn intermarried with the executrix, and in this manner became executor in right of his wife.

[1.] On the first hearing of the cause a verdict was rendered by the jury in favor of the complainants. Wellborn appealed, but his co-defendant, Gartrell, did not. On the appeal trial, Gartrell's depositions were offered in evidence by the defendant and the Court refused to admit them. Gartrell not having appealed, he was no party to the issue to be

tried, and was in no manner interested in the event of the suit so far as it remained yet to be determined. This Court has held that a witness so situated is competent, and the judgment of the Circuit Court excluding his evidence must be reversed.

[2.] It was objected that the defendant had not shown or stated the facts he expected to prove by the witness; that his answer having been read to the jury, his evidence was before them; and that he having been properly a party defendant to the cause, and an appeal having been entered, he could not be examined.

The witness having answered, and his sworn answer having been read to the jury in the hearing of the Court, the presiding Judge was thereby informed of the nature of the proof proposed to be made by him.

[3.] His answer was not evidence for his co-defendant, and if it had been, at the time he made it, the defendant had no right of cross examination, nor the power to call his attention to particular facts, and being no party to the issue now to be tried, and his interest being in no manner involved, the appellant had a right to examine him and have his testimony.

The error assigned on the charge of the Court in regard to the mode of calculating interests chargeable against executors is in accordance with the repeated decisions of this Court and must be sustained.

The alleged error of the Court in the following assignments on the charge is abandoned.

1st. That it was Wellborn's duty to make returns, and th' he can derive no benefit from failing to do so, and responding generally that he can't tell.

2d. That it is the duty of guardians and executors to keep and render annual returns.

3d. That it is the duty of a guardian or executor to manage the property of their *cestui que trusts* solely for their

Wellborn vs. Rogers and wife.

benefit, and that he cannot derive a benefit therefrom to him-self.

4th. That the will of Joseph Gartrell appointed Rebecca his wife, his executrix and the guardian of his children, and created an express trust of them and their property, and if Welborn on his marriage with the widow took upon himself the trust, he was bound to account as executor and guardian.

5th. That it was the duty of Wellborn to have made annu-al returns as guardian and executor to the Court of Ordina-ry, and the law admits of no excuse and the expense is no excuse.

6th. That the returns of the Ordinary are evidence for the defendant, but when, in his answer, he sets up payments and expenses, not in his returns, he must prove them ; his an-swer is not proof without evidence in support.

7th. That what is responsive to the bill is evidence for him, until overcome with evidence equivalent to two witnesses ; but when he sets up, in avoidance, any defence, as that he has received money or property, but has paid it away : this is not evidence for him; he must prove it.

8th. That when Mr. Wellborn answers, that he has paid away money or property of his ward for debts and in their education, but has kept no accounts, and has forgotten ; this is no excuse, he was bound to keep accounts.

9th. That it was the duty of Mr. Wellborn so to employ the property of his wards as would be most profitable and beneficial to them, and that he is liable for the hire of their negroes and the rent of their land, when the lands were not cultivated by their slaves, and it is no excuse that as he has kept no accounts, he has forgotten.

10th. That if the jury believe there was fraud in procur-ing the deed from his wards for the Wilkes lands to himself, it is void, and as he admits, Mrs. Rogers was under age, it was voidable as to her.

11th. That when Mr. Wellborn undertook to have a settle-ment and division with his wards, touching their property

and his guardianship and his executorship on the 10th of April, 1833, it was his duty to have apprised them fully of their rights, by exhibiting to them in writing, a full and detailed account of his management and expenditures of their estate from year to year, and to have furnished them with a copy of their father's will and had them advised and aided in settlement and division by some impartial friend; and that if this was not done, and Mrs. Rogers was ignorant of her rights or was deceived or misled by her confidence in the defendant, or if she was a minor, the deed of division is not binding on her, nor on any of them, if their property was still in his hands.

As the above assignments of error are not insisted on in this Court, we will proceed to the consideration of those that are.

[4.] It is assigned as error that the Court charged the jury, that any conveyance made by Mrs. Rogers, when under age, is void. This charge, in the abstract, is too broad, and as applicable to the case in which it was given, depends entirely on whether it was against the interest of Mrs. Rogers, that the conveyance or conveyances were made. The deed of the twelfth December, 1832, conveying the land on Kemp's creek, in Wilkes county, by the children to the executor, expresses a consideration of ten dollars, and that the full consideration and value was allowed to them jointly and severally in the distribution and division of the negroes and other property of Joseph Gartrell, deceased, which had been paid and allowed to them. In his answer, the defendant says, that the said deed was made to him to enable him to sell and convey the lands and reimburse himself in debts and expenses incurred as executor. If the estate had the entire benefit of this sale, and the land was sold for its value, and by that means other property was saved to the legatees, quite as valuable to them as the land would have been, which must have been disposed of to defray the expenses and pay the debts referred to, the infants were not injured by their

deed and it cannot be avoided. This depends on the proofs in the case. Executors should always proceed legally, and obtain orders for sale of property when the will does not direct or authorize it, and sell strictly in conformity to law. In such cases, when the sale is without fraud, he is liable for the price bid at the sale only, when he assumes the responsibility to sell without the sanction of the Court; he is bound to show the necessity for the sale, and account for the value of the property, whether it sells for it or not. This, it is true, he may prove from the circumstances of the case, but the jury should be satisfied. There can be no pretext for saying that the conveyance of the two negroes to the executor's children, was to the interest of the parties making it, and the executor ought not to have recognized it as an instrument conveying the property, and he is as much liable to those who were under age when it was made, as if it had never been executed.

[5.] The Court charged the jury that the legacy to John Gartrell lapsed on his death without heirs, and that Mrs. Rogers was entitled to one-fifth of it. John Gartrell survived the testator eleven years or thereabouts, and had received his legacy. Upon his death intestate, his estate having vested in right and possession, descended to his heirs at law, and did not fall into the residuum of his deceased father's estate. It is urged that the Court simply mistook the name of John for Jefferson, whose legacy unquestionably did lapse, he having died before the testator, but it was a mistake calculated to mislead the jury, and to induce them to decree against the defendant, one-fifth of the value of John's estate. They were told that the complainants were entitled to it.

[6.] The Court charged the jury, that when there is a will, it is the law of the executor's duty, unless otherwise directed by a Court of Chancery. The Act of 1829, giving the Court of Ordinary power and jurisdiction to order the sale of any part of a testator's estate, when it shall appear to be the interest of the estate that it should be sold, clothes the Court

of Ordinary, to that extent, with all the powers of a Court of
Chancery, but that Act having been passed long since the
Court of Ordinary passed an order of sale of some of the
property of this estate, can have no application.    My breth-
ren, however, think, in which opinion I do not concur, that
the Court of Ordinary had jurisdiction to order the sale un-
der the Act of 1805.

[7.] Exception is taken to the Court's charge to the jury,
that if the executor and guardian omit to keep annual ac-
counts and make annual returns, they are held to *strict proof*
that they have done their duty, touching the trust property,
and that it is not enough for them to answer to a bill that
they have done their duty, but they must prove it, and prove
how and in what manner.    Whether this charge be correct,
depends on the construction placed on the terms, "strict
proof," used by the Court.    The failure of an executor or
guardian to make returns according to law, is an omission
of duty, and therefore a breach of trust, and throws upon
him the burden of making such proof as shall be satisfacto-
ry to the Court and jury, that he has discharged his trust in
regard to the property with fidelity.    He must establish it
by proof, and his answer is not to be regarded except, when
according to law, it may be evidence for him, and then such
weight may be given to it as it may be entitled to.    The Court
and jury will examine the whole case, the embarrassments
surrounding the executor on one hand, and on the other his
management of the property, and the necessary charges up-
on it, and render a decree according to the justice and equity
of the cause.

The defendant is bound to account for the price of Stephen,
and of Hetty and her children, and of the land, and if he
does not adduce evidence satisfactory to the jury that he ap-
plied the proceeds of the sales to the payment of the debts
and liabilities of testator's estate, he must account in the man-
ner hereinbefore stated, and according to the charge of the
Court.

[8.] The Court charged the jury, that "if they believe Mrs. Rogers signed the instrument called a receipt and settlement, and dated on the 28th December, 1839, just before her marriage and after she was twenty-one years of age, but while she and her property were still under Wellborn's control and management, and while the relation of guardian and ward still continued between them, that receipt and settlement are no bar, but she may go behind them and open the settlement, more especially if she was not, at the making of that receipt and settlement, fully apprised of her right by an exhibition of the will of her father, and a statement in writing of his acts, as executor and guardian; or if there was any fraud or concealment, or undue influence exercised by the defendant." This charge is excepted to, but it is in the main right. Although the actual relation of guardian and ward ceased, on Mrs. Rogers attaining the age of eighteen, yet if she and her property remained with the defendant, and he managed and controlled both, she relying implicitly on his rectitude in the management, up to the time of her giving the receipt, although she had long passed the age of twenty-one years, the presumed influence arising during the existence of the relation will be considered as operating at the time, especially if the settlement was made exclusively on the exparte statement of the executor. This was a settlement between executor and legatee, but that under its circumstances does not vary the case. He had married the testamentary guardian, and if he had no legal right to assume the position of his wife in that character, he did it in fact and acquired all the influence of the actual relation, and perhaps more, from his stepping into the place of her father, which seems to have continued, without the slightest abatement, down to the period of the settlement, the giving of the receipt, and to the marriage which took place a few days after. The receipt and settlement thus given and made are no bar to the opening of the account.

[9.) The Court further charged the jury, that "the statute

of limitations does not run against a trust, so long as the trust exists, and although it begins to run when there has been a final settlement by a guardian, with his ward and the ward and his property have left the care and control of his guardian, yet so long as the property remains in the possession of the guardian the trust continues, and the statute does not begin to run, notwithstanding any settlement, so that if the jury believe, Mrs. Rogers' legacy remained in Mr. Welborn's possession up to the time of her marriage in 1839, and she has been a *feme covert* ever since, the statute of limitations has never yet begun to run against the complainants, for she is the meritorious cause of the suit, and it would survive to her in case of Mr. Roger's death." This charge is excepted to. It has been held with strong reason and on sound principle that an "unbroken continuance of a guardian's management of his ward's property, after the ward has attained majority, is, in effect, a continuance of the guardianship as to the property; and between the same parties, the same principles must be applied to the accounts subsequent, as to the accounts during the period of minority. And this jealous watchfulness of transactions, which, from the relation between the parties, are so open to fraud, has been extended, when all accounts relative to the guardianship, were previously settled and the connection was at an end; but the transaction impeached, appeared to have grown out of the former relation." *Mellish vs. Mellish*, 1 *Si. Stu.* 145; *Morgan vs. Morgan*, 1 *Atkins* 488; *Goddard vs. Carlisle*, 9 *Price* 183; *Wright vs. Proud*, 13 *Vesey* 138; *Wood vs. Downs* 18 *Vesey* 127; *Revel vs. Harvey*, 1 *Sim. and Stu.* 507. This doctrine applies to transactions between the parties, and goes to the extent that they may be enquired into, notwithstanding a settlement for the same causes, and under like circumstances that settlements between trustees and *cestui que trust* may be enquired into. The whole matter may be opened and the accounts looked into, when the circumstances show undue influence, improper interference, fraud or the like. If there

has been a settlement and a receipt given, that fixes a point from which the statute begins to run, and puts an end to that *technical* kind of trust, against which the statute of limitations is not a bar.   But if the settlement is made between trustee and *cestui que trust*, the former from his peculiar relation to the latter, being presumed to have a decided influence over her, without exhibiting his accounts, that alone throws a suspicion upon the transaction, and the *cestui que trust* may at any time within the statutory bar institute suit and have the settlement examined into.   If a fraud be discovered in the settlement, the statute does not begin to run until the fraud is discovered, if the party labors under no disability, and is not in laches.

[10.] If the *cestui que trust* be a *feme sole*, and marry after the settlement before the discovery of the fraud, the statute does not run against her during the coverture.

[11.] If the actual trust be terminated, but the trustee continues to exercise the same control of the property and influence over the person, that he had during its existence, so as to retain power or sway over the will of his former *cestui que trust*, and stifle enquiry into his conduct, that will prevent the running of the statue.   The connection must be so wholly at an end, as to indicate that the *cestui que trust* is no longer controlled by the influence which prevailed during the existence of the relation.   If for any cause the statute of limitations does not begin to run against a *feme sole*, and she marries, it remains suspended during her coverture.

[12.] The Court further charged the jury that " the bequest of the negro Allen to Joseph Gartrell, made the said Allen chargeable with the debt of Abram Simons, and that the executrix, Rebecca Gartrell and defendant Gartrell had no right to pay the debt out of the residuary estate."   Error is assigned on this charge.   The testator bequeathed certain land and negroes to his son Joseph Gartrell, and added, " and also Allen, when I pay captain A. Simons what 1 owe him." The debt to Simons was to be paid.   When " I pay," is the

language of the testator. When his estate should pay that debt, and not before, Allen was to become the property of his son Joseph. He should remain and work or be hired. and contribute the proceeds of his hire and labor towards the payment of the debt, before he should become the property of his son Joseph. He was not chargeable otherwise with the payment of the debt.

What we have already said in reference to the matter of the second request made of the Court, to charge the jury by defendant's counsel, is perhaps sufficient. If the influence acquired by Wellborn over Mrs. Rogers in his character of guardian continued down to the period of her marriage, so as to repress all apprehension, on her part, of fraud in the settlement, the saving in the statute did not begin to run, and after marriage the statute protected her from its operation.

The third request of the defendant's counsel made of the Court to charge as to the effect of his answer as evidence in the particulars specified was a legal request, and it ought to have been given as asked. It would have been the duty of the jury, after giving due effect to the answer, to have looked through the whole case, and to have ascertained from the evidence before them, whether it was overcome in these particulars.

We have gone through the case and considered all the errors assigned, which were insisted on in this Court and our judgment is that the judgment of the Court below must be reversed, and a new trial ordered.

Judgment reversed.